BEN COCKRILL *vs.* FRANK MANEY and others. EPHRAIM POLLOCK *vs.* FRANK MANEY and others.

## April Term, 1874.

WILL—CONSTRUCTION—DEVISE FOR LIFE WITHOUT ACCOUNTABILITY.—The testator devised the residue of his estate to his wife, for life, "with the power to sell all or any portion thereof, and to reinvest the proceeds in any way or manner that to her seems meet and proper, and generally to act in all things pertaining to said estate and its management as she deems best, without accountability to any person or legal tribunal," and with authority to appoint, by any instrument in the nature of a last will, the person or persons amongst the testator's children and grandchildren to whom, and in what proportion, the estate should pass in fee simple. *Held*, that the life estate given to the wife is not enlarged into a fee by implication.

WILL—CONSTRUCTION—CHARGE UPON SHARE OF APPOINTEES.—*Held*, also, under the power of appointment in the last clause, the widow might by will charge the persons appointed by her with advancements made to them by the testator or by her.

SAME—SAME.—The widow had become a co-maker of a note with one of the appointees, and for his accommodation, and provided, by a codicil to her will, that, if the same should be paid by her or her estate, it should be charged as an advancement to the appointee. *Held*, that this provision gave the holder of the note no lien upon the share of the appointee in the testator's estate for its payment.

LIS PENDENS—MORTGAGE—SALE.—The mention, in a bill by a creditor to reach the interest of his debtor as devisee of an estate, of an existing mortgage on that interest, and the making of the mortgagee a party defendant, without putting in issue the validity of the mortgage, or asking any relief in regard to it, does not create such a *lis pendens* as to effect the validity of a sale under the mortgage.

4

THE CHANCELLOR :—The contest in these cases is over the proceeds of certain realty in Nashville, sold under the orders of this court, between the complainants on the one part—the first as a creditor of Frank Maney, the second as a creditor of Frank and Rebecca A. Maney—and H. A. Huntingdon on the other part, as a creditor of Frank Maney, claiming as a purchaser of the realty under a deed of trust by the said Frank Maney.

On the 1st day of April, 1864, Thomas Maney, the father of Frank Maney, by deed of trust of that date, duly proved and registered, conveyed the realty in question, consisting of several valuable lots, with improvements thereon, to William L. Murfree, in trust, to secure his creditors. Shortly afterwards the said Thomas Maney died, having made his will and devised his property as follows : " The rest and residue of my estate, real, personal, and mixed, of every kind and quality, and wherever situate, I give my said wife, for and during her natural life, with the power to sell all or any portion thereof, and to reinvest the proceeds in any way or manner that to her seems meet and proper, and generally to act in all things pertaining to said estate and its management as she deems best, without accountability to any person or legal tribunal ; and she is hereby invested with further authority to appoint and designate, by any instrument in the nature of a last will and testament, the person or persons amongst my children or grandchildren to whom, and in what proportion, said estate shall pass and descend in fee simple forever. In default of any appointment on the part of my wife, I give all said estate, on the death of my wife, to my two daughters, Bettie M. Kimberley and Ann R. Sehon, equally to be divided between them, and for their sole use," etc. The testator appointed his wife, Rebecca A. Maney, sole executrix.

Afterwards, in the year 1866, the said Rebecca A. Maney died, having made a will, in which, after reciting the terms of her husband's will, she devises the property received under that will to be equally divided among the children and

grandchildren of herself and her late husband, the grand-children taking the share of the parent, with an exception in favor of a daughter, not material to the solution of this controversy. But she also directed that, in the distribution of the estate, all the advancements made by herself and husband to any of said children or grandchildren should be taken into account, and charged to said child or grandchild. By a codicil to her will she undertakes to furnish a schedule of advancements, to be *prima facie,* but not conclusive, evidence of the amount to be charged to each of the devisees. This schedule, after stating certain advancements to Frank Maney, proceeds thus : "I have given to Frank, for his benefit, two notes for one thousand dollars each, and one for five hundred dollars, executed by myself, Frank Maney, and Wm. B. Maney, all dated July 16, 1866, due six months after date, payable at Ocean National Bank, New York, to Ephraim Pollock. If these notes shall be paid by myself or my estate, they, or such of them as shall be so paid, shall be charged to the said Frank Maney, as an advancement."

This will of Rebecca A Maney was proved in September, 1866, and, on the 21st of January, 1867, the defendant Frank Maney made the mortgage deed under which the defendant Huntingdon claims. By this deed he conveyed to Vaughn Lawrence, in trust, to secure a note of $700, payable to Thomas Chadwell, " all the right, title, interest, or claim I have unto or upon the property hereinafter described, or to any fund that has arisen, or may arise, from a sale of said property, in the settlement of the estate of my deceased mother, R. A. Maney, or from a settlement of the estate of my father, Thomas Maney, deceased. The said lands are as follows," etc., giving a full description of the realty in question, being the same included in the deed from Thomas Maney to William L. Murfree, as aforesaid. The mortgage deed of Frank Maney to Vaughn Lawrence contained a power of sale, in default of payment of the Chadwell note, under which a sale was duly made by the trustee, on the 2d of May, 1868, of all the property therein con-

veyed, at which sale H. A. Huntingdon and William B. Maney, executor of Rebecca A. Maney, became the purchasers, and a deed was made to them accordingly.

Previous to this sale, on the 19th of April, 1867, the complainant Ben Cockrill filed his bill against Frank Maney, William B. Maney, all the other devisees under the will of Rebecca A. Maney, William L. Murfree, Thomas Chadwell, Vaughn Lawrence, and M. B. Howell, clerk and master of this court, setting forth the foregoing facts, except the sale under the trust deed of Frank Maney, as aforesaid, and claiming to be a judgment creditor of Frank Maney, who had exhausted his remedy at law, and seeking to subject to the satisfaction of his said judgments the same interest of Frank Maney, previously conveyed in trust to Vaughn Lawrence, after the debt secured in that deed should be satisfied. The bill suggested that the interest of Frank Maney could not be ascertained until the debts secured in said trust deed of the said Thomas Maney were satisfied, and stated that two bills had been filed in this court by creditors of Thomas Maney secured in his deed of trust to Murfree, one by Tillman H. Atkinson, and the other by M. F. Degraffenreid, then pending, for a settlement of the trust, and asked that his (Cockrill's) bill might be consolidated with those causes so far as to allow him the privilege of being present and heard in the taking of the account of said debts, but no further. The bill further asked that when the surplus was ascertained, after paying Thomas Maney's debts, the parties entitled to such surplus be called into the account, that their advancements be collated, and their respective shares ascertained, "and the amount of money or portion of land coming to the defendant Frank be held subject to the payment of the debt secured under the deed of trust made by him to the defendant Lawrence, and the balance to the payment of your orator's judgment." The bill prayed "that said interest of the said Frank be attached, and held subject to the payment of your orator's judgment, after the satisfaction of the debt aforesaid; and that the defendant Howell be enjoined from paying over any portion

of the said funds coming to the defendant Frank otherwise than in accordance with the prayer of this bill and the decrees of this honorable court."

A fiat was obtained ordering attachment and injunction to issue as prayed. The attachment itself directed the sheriff to attach the property mentioned in the bill, and the interest of Frank Maney in the estate of the late Thomas and Rebecca A. Maney, "but not attached so as to interfere with previous trusts." The return of the sheriff is: "Levied upon the interest of Frank Maney in the estate of Thomas and Rebecca A. Maney, deceased, the same being an equal one-sixth, less twenty per cent. given to Bettie M. Kimberley, as described within."

The bill of Cockrill was taken for confessed as to the defendants Thomas Chadwell and Vaughn Lawrence.

On the 27th of April, 1868, Ephraim Pollock filed his bill against the same parties, made defendant to Cockrill's bill, as a judgment creditor of Frank Maney and William B. Maney on one of the $1,000 notes mentioned in the schedule to the codicil of Rebecca A. Maney's will as aforesaid, and as a creditor of Frank Maney by another note. It sets out the same facts as the previous bill, with some additions, reciting especially the clause of the schedule to the codicil of Rebecca A. Maney's will already quoted, and insists that the note on which complainant had recovered judgment, and which was mentioned in said schedule, "is entitled to priority as an advancement, and must be paid before the said Frank, or any creditor of his not named in said schedule, can receive anything upon his interest in said estate."

The bill seeks also to reach the interest of William B. Maney in the estates in question, and any interest Rebecca A. Maney may have.

The bill states the facts in relation to the trust conveyance of Frank Maney to Vaughn Lawrence to secure the Chadwell note, fully as the same facts are set out in the Cockrill bill, and specially mentions the power of sale under the execution of which Huntingdon claims. But it

does not in so many words, as was done in the Cockrill bill, ask that the balance remaining, after satisfying the Chadwell debt, should be subjected, but prays " that an account be taken of the amount due said Chadwell under said deed to Lawrence, and its relative rights to your orator's debts be declared."

The bill prays " that the interest or shares of the said Frank and William B. Maney in the estates of their deceased father and mother, as derived under their wills as aforesaid, be attached and subjected to the satisfaction of said judgment." The injunction prayed for is the same as in the previous bill. The attachment directs the sheriff to attach the " interest or shares of the said Frank Maney and Wm. B. Maney in the estate of their deceased father and mother, as derived under their wills, to the end," etc. The return of the sheriff is : " Executed April 29, 1868, by levying this attachment on all the within described property." This bill was also taken for confessed against Chadwell and Lawrence.

On the 8th of October, 1870, H. A. Huntingdon filed his petition to be made a defendant, and to be allowed to set up his rights to Frank Maney's interest as purchaser under the sale by Lawrence, trustee, and, upon leave being given by the court, he filed an answer. He insists upon the validity of the trust sale, and claims that he is a creditor of Frank Maney, and became a purchaser at said sale to protect himself.

The first question which arises in this case is as to the interest of Mrs. Rebecca A. Maney in the property in controversy under the will of her husband, Thomas Maney. That will, in plain terms, gives the property to Mrs. Maney " during her natural life," with a power of appointment by will amongst the testator's children and grandchildren in what proportions the estate should pass to them. The doubt grows out of the clause which confers upon the devisee for life " the power to sell all or any portion thereof, and to reinvest the proceeds in any way or manner that to her seems meet and proper, and generally to act in

all things pertaining to said estate and its management as she deems best, without accountability to any person or legal tribunal.'' It is insisted on behalf of the complainant Pollock that this language enlarged the life estate expressly given into a fee by implication.

I have had occasion in the recent case of *McGavock* v. *Pugsley*, 1 Tenn. Ch. 410, to consider the general principles settled by the decisions in this state upon the question thus raised. I came to the conclusion that there was no conflict in our authorities upon these principles, although the correctness of their application to the facts of some of the particular cases might be doubted. These principles are that an unlimited power of disposition given by the will, although the devise be expressly for life, carries the absolute interest; whereas a contingent or qualified power of disposition does not. For the first of these rules, see *Smith, T.* v. *Bell*, M. & Y. 302, and cases cited in the head-note to Cooper's edition. For the second, see *Deaderick* v. *Armour*, 10 Humph. 588 ; *Pillow* v. *Rye*, 1 Swan, 185 ; and *Downing* v. *Johnson*, 5 Coldw. 229. These last cases decide that, if the power of disposition is contingent—as, for example, upon its being necessary for the convenience and support of the tenant for life—the fact that the decision of the existence of the contingency is left to the tenant for life will make no difference, even when the devise over is only of the '' balance '' of property left on hand at the death of the tenant for life. All the authorities agree, and it is conceded in argument, that, upon the valid execution of a power, the appointees take under the original will. *Cruse* v. *McKee*, 2 Head, 1, 8. In this view the devise of property for life, with a contingent discretionary power of disposition in the tenant for life, and a devise over to appointees, stands precisely in the same attitude as a devise for life, with similar power of disposition, and remainder over ; and, upon principle, the rule of construction applicable to the one class of devises would equally apply to the other. And, although no decision exactly in point may exist in our books, yet the

cases, as far as they go, are strictly in accord with the con-clusion thus reached. *Woods* v. *Sullivan*, Swan, 185 ; *Forsey* v. *Luton*, 2 Head, 183 ; *Vancil* v. *Evans*, 4 Coldw. 340 ; *Word* v. *Morgan*, 5 Coldw. 407.

But the clause of the will under consideration does not confer upon the tenant for life any absolute power of disposition for her own purposes. The power of disposition is "to sell and reinvest," and the freedom from accountability 'is in her acts pertaining to the estate and its management—that is to say, in the exercise of the power of sale and reinvestment, and in the details of management. This does not exclude accountability for waste of the estate, or its conversion to unauthorized uses. *Forsey* v. *Luton*, 2 Head, 183 ; *Vancil* v. *Evans*, 4 Coldw. 340 ; *Bradley* v. *Westcott*, 13 Ves. 445.

It will be noticed that the widow, in the exercise of the power of appointment under her husband's will, undertakes to charge the appointees with advancements made to them by her husband or herself. This, perhaps, she had a right to do under the power given her to produce inequality in the portions of such devisees. *Cruse* v. *McKee*, 2 Head, 8. In the absence of such power it is very clear that it is not a case for collation of advancements, as in cases of intestacy. Id. For the testator, Thomas Maney, has not died intestate as to any of his property, but has undertaken to dispose of it all, and the appointees take under his will. Id. The only question, therefore, that can arise in this regard is whether the widow, in the execution of the power of appointment, could limit the "proportion" of each devisee in the estate, by charging such devisee with advancements—not strictly as advancements, but as a charge in diminution of his share. The right so to do has been tacitly conceded in argument, and, I think, correctly. But the right of the complainant Pollock to charge the note, on which he recovered judgment in the federal court, in diminution of the share of Frank Maney, is resisted. This note, it will be borne in mind, is mentioned in the schedule to the codicil to

Mrs. Maney's will as having been given, with one other note, by her to Frank, for his benefit, the fact being that she had gone upon these notes to enable him to raise money, he himself being also bound upon the notes as co-maker. The codicil then provides : " If these notes shall be paid by myself or my estate, they, or such of them as shall be so paid, shall be charged to the said Frank Maney as an advancement."

It is now gravely argued for the holders of these notes that they are entitled to a lien, by virtue of this clause of the will of Mrs. Maney, upon Frank Maney's share of his father's estate, for their payment. But the only contract between the makers of these notes and the holders is the contract embodied in the note itself. It is not pretended that they stipulated for the provision on the subject of these notes contained in Mrs. Maney's will, or had any connection with it, or even knowledge of it, until after the death of Mrs. Maney. Nor, if they had been parties to it, could it have any validity to create a lien on Frank Maney's property as against other creditors of Frank Maney who acquired liens without notice of such prior stipulation.

But the provision of the codicil itself is too clear for doubt. It distinctly directs that Frank Maney's proportion of his father's estate shall be charged with these notes, only in the event they are paid " by myself or my estate." If for any reason she is released from liability on the notes, or if for any cause neither she nor her estate ever pays any part of said notes, the only contingency upon which Frank Maney is to be charged as an advancement never happens. It is conceded that she has no estate, and the contingency, in all human probability, can never happen. But, until it does happen, there is no pretence for diminishing Frank Maney's share of his father's estate by the amount of these notes ; for he, being himself bound for them, and liable in the eye of the law to pay them, is entitled to his share of the property without deduction for them.

This brings us to the only remaining question between

the complainants, as judgment creditors of Frank Maney, and Huntingdon, as purchaser under the deed of trust of Frank Maney to Vaughn Lawrence to secure the Chadwell debt. It is a contest between creditors of Frank Maney, in which neither creditor shows any equity as against the other, and, in such cases, the well-settled rule of this court is that the law must prevail.

If the question turned exclusively upon the Cockrill bill, the solution would present little difficulty. That bill, it will be recollected, distinctly recognizes the prior right of Chadwell under his deed of trust, and only seeks to reach the surplus after satisfying that debt. This limitation of the relief is twice repeated—once in the body of the bill, and again in the prayer. The attachment, moreover, directs the sheriff to attach Frank Maney's interest in the property, "but not so as to interfere with previous trusts," manifestly referring to the Chadwell trust deed mentioned in the bill, and the levy of the sheriff is limited by the description in the attachment. It is clear, therefore, that the rights of parties under the trust deed were not, in fact, brought into the litigation, nor sought to be brought in, and there was nothing to prevent those parties from proceeding to execute the trust if they saw proper. The complainant might, perhaps, under the circumstances, have asked that the execution of that trust be suspended until the interest of Frank Maney was ascertained, upon the ground that the clouds resting over it were such as to destroy its then salable value, and that a sale would be a sacrifice, and its purchase a game of hazard. But the complainant seems to have taken it for granted that no attempt would be made to execute the trust until the interest of Maney was ascertained, and asked for no injunction. Under these circumstances it was his duty to attend the sale of the trustee and bid for the property, or to redeem it after it was bid off, and, having failed to do either, the court can give him no relief as against an equally meritorious creditor claiming under the deed.

The bill of Pollock presents more difficulty, rather by its

omissions, in which it differs from Cockrill's bill, than in its positive features. It states the execution of the deed to Chadwell, and its provisions, including the power of sale, as fully as the Cockrill bill, but does not positively recognize its priority of right, as was done in the other bill, nor does it ask for relief in subordination to the claimants under the deed. The prayer is " that an account be taken of the amount due said Chadwell under said deed to Lawrence, and its relative right as to your [orator's] debts declared." The attachment directs the sheriff to attach the share of Frank Maney in his father and mother's estate, without describing it, and the return is of a levy on the " within described property." The bill does not contest the validity of the Chadwell deed, or state any fact upon which such a contest could possibly arise. The question, therefore, comes to this : Does the mere statement in the bill of the prior mortgage (its validity not being put in issue, and no relief being asked against it) create such a *lis pendens* as to the mortgage that no step can be taken for its execution except upon application to the court, and by its leave? In other words, what was the extent of the *lis pendens* in this case? If it included the interest acquired under the deed of trust—that is to say, if the bill sought to reach the interest of Frank Maney which was covered by the trust, and in antagonism to the parties claiming under the deed—then, as to such interest, there would be a *lis pendens* which would be notice to all the world. *Shelton* v. *Johnson* 4 Sneed, 672. Otherwise, it would seem clear that there was no such *lis pendens*. The authorities cited by the learned counsel of the complainant go to this extent, but no further.

The doctrine of *lis pendens*, it need scarcely be said, is one *strictissimi juris*. It is founded in public necessity, and presumes, without reference to the actual fact, that judicial proceedings are publicly known throughout the realm. It is not a ground for liberal, but strict, construction, with a

view to the protection of innocent third persons not having actual notice. If the rule be extended beyond its proper limits it would become unjust and pernicious. 4 Sneed, 681. And so it is universally laid down. "All men in the state are warned that they meddle at their peril with the *property sued for* and *specifically pointed out* in such judicial proceedings." Adams Eq. 157. It would never do to carry it beyond its proper bounds.

Pollock's bill, now before us, does not make any contest over the rights acquired under the Chadwell deed, nor state any fact that would justify such a contest. The *pro confesso* taken as against Chadwell and his trustee would not have justified a decree setting aside their deed, or giving the complainant a preference over them for the satisfaction of complainant's debt. The bill was, in reality, for precisely the same purpose as the Cockrill bill—to reach the surplus of Frank Maney's interest in his father's estate after satisfying the Chadwell debt. It was, therefore, not a *lis pendens* as to any right acquired by virtue of that deed. "The property sued for and specifically pointed out," was the equity of redemption of Frank Maney in said property, or the surplus after satisfying the Chadwell debt, if the property sold for more than would satisfy the debt. There was no injunction against the execution of the trust; nor was there any legal or equitable obligation on Chadwell's part to await the event of a tedious litigation before foreclosure. He had a right to have the land sold, under the power of sale in the deed, and the complainant was bound, at his peril, to attend the sale, or redeem within the time prescribed by law. *White* v. *Carpenter*, 2 Paige, 254.

The result is that the title of Huntingdon to the property in controversy, or its proceeds, is superior to that of the complainants. He will, however, be required to pay the costs of his proceedings to assert his rights. The complainants and their sureties will pay the residue of the costs. No question has been made as to the right of complainants

to a decree as against William B. Maney, and his share of the property under the purchase with Huntingdon, and the complainants may take such a decree against it as they may be advised.